## VINCENT M. VALVO ET AL. *v*. FREEDOM OF INFORMATION COMMISSION ET AL.
### (SC 18283)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued September 24, 2009—officially released January 26, 2010

*Daniel J. Klau,* with whom was *Justin R. Clark,* for the appellants (plaintiffs).

*Martin R. Libbin,* deputy director of legal services, for the appellee (defendant chief court administrator).

*Victor Perpetua,* appellate attorney, for the appellee (named defendant).

*Opinion*

ROGERS, C. J. The plaintiffs, Vincent M. Valvo and the Connecticut Council on Freedom of Information, filed a complaint with the named defendant, the freedom of information commission (commission), after the defendant chief court administrator of the judicial branch of the state of Connecticut (chief court administrator), denied their request pursuant to the freedom of information act (act), General Statutes § 1-200 et seq., for copies of certain docket sheets.[1] The commission dismissed the complaint and the plaintiffs appealed from the dismissal to the trial court, which dismissed the appeal. The plaintiffs then appealed[2] from the judgment of the trial court claiming that, although the trial court properly determined that, under this court's decision in *Clerk of the Superior Court* v. *Freedom of Information Commission,* 278 Conn. 28, 37, 895 A.2d 743 (2006), the docket sheets were not administrative records subject to the act, that case was wrongly decided and this court should overrule it. We affirm the judgment of the trial court on the alternate ground that the plaintiffs' claim is nonjusticiable.

The record reveals the following undisputed facts and procedural history. In a letter dated May 3, 2007, the plaintiffs requested copies of the docket sheets in all level 2 sealed files from the office of the chief court

[1] When the plaintiffs requested the copies of the docket sheets, the Honorable William J. Lavery was the chief court administrator. The Honorable Barbara M. Quinn is the current chief court administrator.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

administrator.[3] The chief court administrator denied the request on the ground that, under this court's decision in *Clerk of the Superior Court* v. *Freedom of Information Commission*, supra, 278 Conn. 37, the docket sheets were records of adjudicative matters, not records of an administrative function, and, therefore, they were not subject to the act. Id. ("the act applies only to records prepared by a subdivision of the judicial branch in the course of carrying out its administrative functions"); id., 42 ("administrative records are records pertaining to budget, personnel, facilities and physical operations of the courts and . . . records created in the course of carrying out the courts' adjudicatory function are categorically exempt from the provisions of the act"). The plaintiffs then filed a letter of complaint with the commission. The commission concluded that, "with respect to the requested records, the [judicial branch] is not a public agency within the meaning of [the act]." Accordingly, the commission dismissed the complaint for lack of subject matter jurisdiction. The plaintiffs then appealed from the dismissal to the trial court.

While the plaintiffs' administrative appeal was pending in the trial court, the judicial branch implemented a process by which all level 2 sealed cases in the state

[3] Prior to 2003, Connecticut courts engaged in a practice of classifying sealed case files as level 1, level 2 or level 3 files. "[U]nder level 1, which [was] used when a case [was] statutorily sealed or when the entire file [was] ordered sealed by the court, the matter [was] confidential and no information [was] to be released or disclosed to the public, including the docket number and case caption, and [was not] allowed to appear on any calendars; under level 2, the entire file [was] sealed but the case caption and docket number [could] be disclosed; and under level 3, specific documents [were] sealed." (Internal quotation marks omitted.) *Hartford Courant Co.* v. *Pellegrino*, 380 F.3d 83, 87 (2d Cir. 2004). This practice was abolished in 2003 when Practice Book § 11-20A was adopted. See Practice Book § 11-20A (b) ("[e]xcept as provided in this section and except as otherwise provided by law, including Section 13-5, the judicial authority shall not order that any files, affidavits, documents, or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited").

were identified and reviewed to determine whether the sealing orders should be overturned. As the result of these proceedings, all but five of the docket sheets requested by the plaintiffs were unsealed. Thereafter, the office of the chief court administrator provided the plaintiffs with copies of the docket sheets in the unsealed cases.

In her brief to the trial court following the disclosure in the unsealed cases, the chief court administrator argued that the trial court should dismiss the plaintiffs' appeal on the ground that it was moot. Specifically, the chief court administrator contended that the case was moot with respect to the unsealed docket sheets because they had been provided to the plaintiffs and that it was moot with respect to the five sealed docket sheets because the chief court administrator had no authority to issue orders to unseal the files that remained sealed pursuant to a court order. See *Hartford Courant Co.* v. *Pellegrino*, 380 F.3d 83, 97 (2d Cir. 2004) ("neither the Chief Court Administrator nor the Chief Justice are vested, in their administrative capacity, with the authority to overturn orders issued by other judges or to open statutorily sealed files"). Therefore, the chief court administrator argued, the trial court could grant no practical relief because, even if the trial court found that the docket sheets were subject to the act, she had no power to overturn the sealing orders. In addition, the chief court administrator relied on a prior case in which the commission had determined that documents that are subject to a sealing order pursuant to General Statutes § 46b-11[4] are exempt from the act under Gen-

[4] General Statutes § 46b-11 provides in relevant part that "[t]he records and other papers in any family relations matter may be ordered by the court to be kept confidential and not to be open to inspection except upon order of the court or judge thereof for cause shown." It is not clear in the present case whether any of the five sealed files at issue were sealed pursuant to this statute.

eral Statutes § 1-210 (a),[5] and that "it was not for the [c]ommission to second-guess the appropriate scope of a sealing order issued by a judicial authority."[6] *Peruta* v. *Chief Court Administrator*, Freedom of Information Commission, Docket No. FIC 2003-035 (September 24, 2003).

The trial court disagreed with the chief court administrator's argument that the case was moot because it concluded that the question of whether the chief court administrator had the authority to vacate the sealing orders went to the merits of the case, not to the trial court's subject matter jurisdiction. The trial court agreed, however, with the chief court administrator's claim that, under *Clerk of the Superior Court*, the requested docket sheets were not administrative records and, therefore, were not subject to the act. Accordingly, it dismissed the appeal for lack of subject matter jurisdiction.

This appeal followed. At oral argument before this court, the plaintiffs conceded that their claim is moot with respect to the docket sheets that the chief court administrator has provided to them. Thus, only the five

---

[5] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records . . . ."

[6] In *Peruta* v. *Chief Court Administrator*, Freedom of Information Commission, Docket No. FIC 2003-035 (September 24, 2003), the complainant, Edward A. Peruta, sought from the chief court administrator "records that would disclose the judge that entered the sealing order, the date of the order, the judicial district in which the order was issued, and the date of expiration of the order" in all level 1 sealed cases. The chief court administrator claimed that the records were exempt under § 1-210 (a) because they had been sealed pursuant to § 46b-11. The commission held that "§ 46b-11 . . . clearly permits the sealing of any records in a family relations matter . . . and that it is not for the [c]ommission to second-guess the appropriate scope of a sealing order issued by a judicial authority." Id. Accordingly, it concluded that the chief court administrator had not violated the act by refusing to disclose the contents of the sealed files. Id.

sealed docket sheets that the chief court administrator has not provided are at issue in this appeal. The plaintiffs claim that, although the commission and the trial court properly determined that, under this court's decision in *Clerk of the Superior Court* v. *Freedom of Information Commission,* supra, 278 Conn. 53, the requested docket sheets were not administrative records subject to the act, that case was wrongly decided and this court should overrule it. In response, the chief court administrator contends that we should affirm the judgment of the trial court on the alternate ground that the case is moot because no practical relief can be provided.[7] She further contends that, if we conclude that the case is not moot, the trial court properly determined that the documents are not subject to the act under *Clerk of the Superior Court,* which she maintains was correctly decided. We conclude that the plaintiffs' claim is nonjusticiable because neither the commission nor the trial court can grant the plaintiffs any practical relief.

We begin with the standard of review. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston,* 286 Conn. 367, 373–74, 944 A.2d 276 (2008). "[T]he four part test for justiciability [was] established in *State* v. *Nardini,* 187 Conn. 109, 445 A.2d 304 (1982). . . . Justiciability requires (1) that there be an actual controversy

___

[7] After oral argument before this court, the plaintiffs filed a motion for permission to file a supplemental brief on the issue of justiciability, which they claimed had been raised for the first time at oral argument. This court granted the plaintiffs' motion and also allowed the chief court administrator to file a supplemental brief on the issue.

between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power[8] . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *State* v. *Preston*, supra, 373–74. "A case is considered moot if [the trial] court cannot grant the appellant 'any practical relief through its disposition of the merits . . . .'" *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 255, 967 A.2d 1199 (2009). Because mootness implicates this court's subject matter jurisdiction, it raises a question of law over which we exercise plenary review. See *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 279, 933 A.2d 256 (2007).

The chief court administrator contends that the plaintiffs' claim that the docket sheets are subject to the act as administrative records is moot because she has no authority to overturn sealing orders issued pursuant to court order. She further argues that the commission has no power in an administrative proceeding to overturn the decision of the trial court in separate proceedings wherein the trial court reviewed the sealing orders and determined that the cases should remain sealed. Therefore, she argues, even if the docket sheets ultimately were found to be administrative records subject to the act, no practical relief would be available.

The plaintiffs concede that, even if this court were to overrule its decision in *Clerk of the Superior Court*, neither the chief court administrator nor the commission would have authority under the act to overturn

---

[8] This prong of the *Nardini* justiciability standard is not at issue in the present appeal because there is no dispute that a trial court has the power, *in a case properly before the court*, to vacate sealing orders.

the sealing orders in the five sealed cases;[9] see *Hartford Courant Co.* v. *Pellegrino*, supra, 380 F.3d 97; but contend the trial court would have the inherent judicial authority, as opposed to authority under the act, to do so on appeal from the commission's decision.[10] They also contend that this court cannot consider the merits of the question of whether the sealed docket sheets are subject to the act without first resolving the issue of whether this court correctly determined in *Clerk of the Superior Court* that the documents are not administrative records, an issue which they contend implicates the commission's subject matter jurisdiction. See *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002) ("Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." [Internal quotation marks omitted.]). Finally, they contend that, because this court cannot address the question of whether the sealed docket sheets are exempt from the act, there is no need for this court to determine whether the trial court has the inherent authority to unseal the documents.

We disagree with the plaintiffs. By conceding that neither the commission nor the trial court has *any*

[9] Specifically, the plaintiffs conceded at oral argument before this court that the act itself does not confer authority on the commission or on the trial court in this administrative appeal to overturn sealing orders issued by another trial court.

[10] The plaintiffs did not raise this claim before the trial court because they claimed, and the trial court held, that the question of whether the sealing orders could be vacated by the chief court administrator or the commission went to the merits of the plaintiffs' claim under the act, not the trial court's subject matter jurisdiction. Moreover, because the chief court administrator could not have anticipated that the plaintiffs would raise this claim on appeal to this court, there was no occasion for her to raise a claim that the trial court *lacked* the power to overturn a sealing order issued by another trial court. As we discuss in the body of this opinion, because the plaintiffs' claim implicates the trial court's subject matter jurisdiction, we may address it regardless of whether it was raised before the trial court.

*authority under the act* to overturn the sealing orders, the plaintiffs effectively have conceded that the documents are exempt from the act. Because the plaintiffs cannot make even a colorable claim that the documents are not exempt from the act, their claim that the documents are administrative records is nonjusticiable unless some relief stemming from some authority apart from the act is available. It is clear, therefore, that the question of whether the trial court has the inherent power to overturn the sealing orders does not go to the merits of the question of whether the sealed docket sheets are exempt under the act, but instead raises the entirely distinct and primary question of whether practical relief is, nevertheless, available. Because the availability of practical relief also goes to the trial court's subject matter jurisdiction, we may address that question at the outset.

We turn, therefore, to the question of whether a trial court presiding over an administrative appeal has the authority to overturn sealing orders issued by another trial court in a separate case. We conclude that it does not. We are aware of no authority for the proposition that a trial court presiding over an administrative appeal may overturn a ruling by another trial court in *an entirely unrelated case involving different parties*—a proposition that the plaintiffs themselves have characterized as novel.[11] Indeed, we conclude that the claim more accurately may be characterized as completely unworkable. Our jurisprudence concerning the trial court's authority to overturn or to modify a ruling in a particular case assumes, as a proposition so basic that

---

[11] We recognize, of course, that a court may revisit a ruling previously made by that court in the same case. See *Breen* v. *Phelps*, 186 Conn. 86, 100, 439 A.2d 1066 (1982). In addition, we do not suggest that a ruling may be overturned or modified only by the same *judge* that issued the original ruling. See *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 365, 576 A.2d 1317 (1990) ("[t]here is no requirement that the same judge rule on all matters arising after a dissolution judgment").

it requires no citation of authority, that any such action will be taken only by the trial court with continuing jurisdiction over the case, and that the only court with continuing jurisdiction is the court that originally rendered the ruling. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 225–30, 884 A.2d 981 (2005);[12] *Adams* v. *Vaill*, 158 Conn. 478, 482, 262 A.2d 169 (1969) ("courts have inherent power to change or modify *their own* injunctions where circumstances or pertinent law have so changed as to make it equitable to do so" [emphasis added]); see also *Rau* v. *Rau*, 37 Conn. App. 209, 211, 655 A.2d 800 (1995) (General Statutes § 46b-86 [a], which authorizes modification of order for periodic payment of alimony after judgment, confers "continuing jurisdiction over alimony awards" on trial court); *Hall* v. *Dichello Distributors, Inc.*, 14 Conn. App. 184, 193, 540 A.2d 704 (1988) ("a permanent injunction necessarily requires continuing jurisdiction"); cf. General Statutes § 52-212a ("[u]nless otherwise provided by law and *except in such cases in which the court has continuing jurisdiction*, a civil judgment or decree rendered in the Superior Court may

---

[12] In *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 225–30, certain newspapers sought permission to intervene in a number of withdrawn cases for the purposes of asking the trial court to overturn certain sealing orders that had been issued in the cases. The trial court opened a new case file as "the most efficient tool" for resolving the issues raised by the newspapers; (internal quotation marks omitted) id., 181; and ultimately overturned the sealing orders. Id., 184. On appeal, this court recognized that the trial court would have had no authority to overturn the sealing orders in the withdrawn cases if it had not effectively restored the withdrawn cases to the docket and allowed the newspapers to intervene. Id., 199, 209 n.51. Our conclusion that the trial court had *effectively* restored the cases to the docket was predicated on our conclusions that: (1) the court had the power *actually* to restore the withdrawn cases to the docket because that court originally had issued the sealing orders and it had continuing jurisdiction over the cases; and (2) the court had custody of and control over the sealed documents. Id., 215–16. Thus, it is implicit in *Rosado* that, if a trial court does *not* have continuing jurisdiction over a case, and if it does *not* have custody of and control over the sealed documents, then it does *not* have the power to overturn the sealing orders.

not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed" [emphasis added]). This assumption is well justified in light of the public policies favoring consistency and stability of judgments and the orderly administration of justice. See *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 601–602, 922 A.2d 1073 (2007); *State* v. *Damon*, 214 Conn. 146, 161, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990); *State* v. *Stevenson*, 53 Conn. App. 551, 562, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999). It would wreak havoc on the judicial system to allow a trial court in an administrative appeal to second-guess the judgment of another trial court in a separate proceeding involving different parties, and possibly to render an inconsistent ruling. This is especially true when a direct challenge to the original ruling can be made by any person at any time in the trial court with continuing jurisdiction, as is the case with sealing orders. Moreover, it is by no means clear that procedures adequate to protect the interests of all affected parties could even be devised in such a proceeding.[13] We conclude, therefore, that the trial court in the present administrative appeal, which does not have continuing jurisdiction over the cases in which the relevant sealing orders were issued and does not have custody of or control over the sealed docket sheets, does not have the power to overturn those sealing orders.

In support of their claim to the contrary, the plaintiffs point out that the trial court in an appeal from a decision

---

[13] In the present case, for example, it is not clear to us how the trial court could provide notice to the parties to the sealed cases that the sealing orders were being challenged unless it ordered the trial courts with custody of the sealed files to reveal identifying information, thereby potentially violating the sealing orders. More fundamentally, the trial court in the present case would have no jurisdiction to order the trial courts that issued the sealing orders to do anything unless those courts and the parties in the underlying cases were named as parties in this administrative appeal, which they were not.

of the compensation review board (board) has the power to adjudicate a constitutional question, even though the board does not have the jurisdiction to consider such questions. See *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337–41, 819 A.2d 803 (2003).[14] Our decision in *Rayhall*, however, was premised on the language of General Statutes (Rev. to 2003) § 31-301b, which provides that "[a]ny party aggrieved by the decision of the [b]oard upon any question or questions of law arising in the proceedings may appeal the decision of the [b]oard to the Appellate Court." See *Rayhall* v. *Akim Co.*, supra, 339–40. We concluded that, because a claim that the decision of the board has violated the plaintiff's constitutional rights " 'arise[s]' " from the workers' compensation proceedings within the meaning of § 31-301b, the trial court had jurisdiction over the claim. Id., 340; id. ("a question of law 'arising' in a board proceeding would comprise not only those issues expressly decided by the board on the basis of its jurisdiction, but also those issues that present themselves *in the proceeding* or become operative as a result *of the board's decision*" [emphasis added]).

We conclude that, contrary to the plaintiffs' claim, nothing in *Rayhall* supports the proposition that a trial court in an administrative appeal may overturn the order of another trial court in a separate action. Such an order does not arise in the proceeding before the agency or as the result of the agency's decision. Moreover, our decision in *Rayhall* that the trial court in an appeal from a decision of the board may address constitutional questions over which the board does not have subject matter jurisdiction does not implicate the

[14] The plaintiffs cite several other cases in which the trial court considered a constitutional claim in an appeal from an agency that did not have jurisdiction to consider the claim. Because the question of whether the trial court had jurisdiction over the claim and, if so, why, was not raised in those cases, we do not find them instructive.

issues of orderly judicial process, personal jurisdiction, fairness to all interested parties, adequacy of the record and consistency and stability of judgments that would be implicated by allowing a party in an administrative appeal to mount a collateral attack on an order by another trial court.

The plaintiffs also contend that the decision of the United States Court of Appeals for the Second Circuit in *Hartford Courant Co.* v. *Pellegrino*, supra, 380 F.3d 83, supports their claim that "[a] nonparty can . . . attack a sealing order collaterally by filing an action in [a separate] court." We disagree. The court in *Pellegrino* merely held that, to the extent that the sealing orders in that case had been issued by the trial court, the District Court could provide no practical relief because "neither the Chief Court Administrator nor the Chief Justice are vested, in their administrative capacity, with the authority to overturn orders issued by other judges or to open statutorily sealed files." Id., 97. Nothing in *Pellegrino* suggests that *a trial court would* have the power to overturn sealing orders issued by another trial court.[15]

Finally, the plaintiffs contend that they could challenge the sealing orders in a mandamus action and, therefore, there is no reason why they should not be permitted to bring a collateral attack on the orders in this administrative appeal. In support of this contention, they cite *United States* v. *McVeigh*, 119 F.3d 806 (10th Cir. 1997). Again, we disagree. In *McVeigh*, when certain newspapers filed motions to unseal documents in the underlying criminal case, the District Court treated the motions as a "mandamus" action merely as a procedural device, comparable to treating the motions as motions to intervene; see id., 810; cf. *Rosado* v. *Bridgeport*

---

[15] There is no dispute in the present case that all of the sealing orders at issue were issued or continued, or both, by a trial court.

*Roman Catholic Diocesan Corp.*, supra, 276 Conn. 201; by which the court could assert jurisdiction over claims made by nonparties. The court in *McVeigh* did not create a new case file for the mandamus action, but adjudicated the newspapers' claims in the context of the criminal proceeding with the full participation of the parties to that proceeding. See *United States* v. *McVeigh*, supra, 809. Thus, the newspapers in *McVeigh* effectively intervened in the criminal proceeding for purposes of challenging the sealing orders and then sought direct appellate review of the District Court's rulings on the orders in the Circuit Court. Id., 808–809. Accordingly, *McVeigh* does not support the proposition that the newspapers could have filed an independent petition for writ of mandamus in *another* court seeking to overturn the sealing orders.

We reject the plaintiffs' claims that they may mount a collateral attack on the sealing orders in this administrative appeal. We conclude, therefore, that the plaintiffs' claim that the remaining five sealed docket sheets are administrative records subject to the act is nonjusticiable because no practical relief is available, and we affirm the judgment of the trial court on this alternate ground.

The judgment is affirmed.

In this opinion the other justices concurred.